IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

vs.                                  CASE NO.: 3:21-cr-48-TJC-PDB

**KIMBERLY MICHELLE CLARIDY WALKER**

                **Defendant.**
_____/

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant, Kimberly Michelle Claridy Walker, stands before this Court, charged with one count of violating of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846, as well as one count of violating 18 U.S.C. §§ 1956(h) and 1956(a)(1)(B). Defendant requests this Court to impose a sentence that is sufficient but not greater than necessary to comply with the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2). Those goals, the consideration of the nature and circumstances of Mrs. Walker's offense, and the other factors set forth in the statute support a sentence below the guideline range.

*Current Posture of Defendant*

The base offense level in the PSR for Count I is 34. The probation office has

1

added additional levels for specific characteristics of the underlying offense. This includes two (2) additional levels for a dangerous weapon being possessed, based on USSG §2D1.4(b)(1), to which Mrs. Walker objects, as well as another two (2) levels for maintaining a premises for the purpose of manufacturing or distributing controlled substances, based on USSG §2D1.1(b)(12). Next, two (2) additional levels were added based on Mrs. Walker being convicted under 18 U.S.C. § 1956. The probation office then added an additional four (4) levels for an adjustment based on Mrs. Walker's role in the offense, which they classified as organizer or leader under USSG §3B1.1(a). The probation office then subtracted two (2) levels for demonstrating acceptance of responsibility, and one (1) more level for assisting authorities in the investigation or prosecution of her own misconduct. Based on that calculation, this leaves Mrs. Walker with a total offense level of 41.

Probation calculated a criminal history computation based on total prior criminal convictions, which resulted in a criminal history score of 10. According to the sentencing table, this criminal history score would normally establish a criminal history category of V. In this case, however, due to Mrs. Walker qualifying as a career offender based on convictions from 2002 and 2003, the correct criminal history category is VI.

### *Defendant's Objections to Guideline Calculation*

Mrs. Walker first objects to the base level as stated in the PSR. Mrs. Walker contends that the amount of weight attributed to her in the PSR is excessive because she did not begin to be involved with this operation until after her husband, Neal Walker, was released from prison.

Mrs. Walker objects to the addition of two (2) points in accordance with USSG §2D1.1(b)(1) for a dangerous weapon being possessed by Mrs. Walker. It has been established during the discovery phase of this case that Mrs. Walker was unaware of the existence of the firearm and that it belonged to her husband, a co-defendant in this proceeding. Mrs. Walker also objects to the Government's assertion that an additional two (2) levels should be added under USSG § 2D1.1(b)(16)(E), due to the facts of the case establishing that Mrs. Walker committed the offense as part of a pattern of criminal conduct engaged in as a livelihood. Mrs. Walker was also a legitimate small-business owner in Jacksonville, and the proceeds of this operation were not the primary livelihood that she relied upon. Mrs. Walker had a business consultant with whom she purchased a BP gas station in June of 2020, and she also was co-owner of Walker Property Investment. The investment company was created in 2019 with her husband, and at the time this case began, they owned a total of six (6) rental houses that were another source of

income for Mrs. Walker.

### *Factors in Mitigation of the Offense for a Departure or a Variance*

There are several factors in mitigation of the offense that are pertinent to the provisions of USSG §1B1.4 (<u>Information to Be Used in Imposing Sentence; Selecting a Point within the Guideline Range or Departing from the Guidelines</u>). The mandate of 18 U.S.C. § 3553(a) is for the court to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in the statute. In <u>United States v. Hunt</u>, 459 F.3d 1180, 1182 (11th Cir. 2006), the court summarized the factors that a sentencing court must consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established . . .;
> (5) any pertinent [Sentencing Commission] policy statement . . .;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

In Mrs. Walker's case, it is the "circumstances of the offense and the history and characteristics of the defendant," as well as "the need to avoid unwarranted

4

sentence disparities among defendants with similar records who have been found guilty of similar conduct" that justifies a downward departure. Such a sentence would, as well, fulfill the remaining purposes set forth in the statute.

### *The History and Characteristics of the Defendant*

Mrs. Walker was born on ▬▬▬▬▬▬▬, 1976 in Gainesville, Florida. She was then raised in Lake City, and moved to Jacksonville in 2010. She grew up with her mother, Joanne Arthur Chapman, as well as her two younger siblings. Mrs. Walker's father, Ernest Lee Claridy, has never has a presence in her life. Growing up as the oldest child to a young mother who never had a legal, steady job was highly detrimental to Mrs. Walker. Their family grew up in poverty, and Mrs. Walker would watch her mother continually make destructive decisions for their family. When she was still young, Mrs. Walker's mother began a toxic relationship with Guy Allen, who continued to be a stepfather figure until about age 11. Mr. Allen was physically abusive towards Mrs. Walker's mother and all of the children, so it was a relief when they escaped his grasp and did not have to live in fear of the abuse any longer. At some point during their relationship, Mrs. Walker's mother shot Mr. Allen. The charges were ultimately dropped, but the trauma of the entire experience is one that has haunted Mrs. Walker for the rest of her life. Mrs. Walker was glad to have Mr.

Allen out of their lives ultimately, but the family was still plagued with financial insecurity. They moved around a lot and there were times when the utilities were shut off. Mrs. Walker felt like she needed to help provide for her younger siblings, so that is when she began to shoplift to survive. While most parents would punish their child for this criminal behavior, Mrs. Walker's mother encouraged it, which then shaped her entire mindset moving forward. During this time Mrs. Walker's mother also began to parent by way of physical discipline, and at that time Mrs. Walker vowed to herself that if she ever had children, she would never rely on a man for support and would make sure that her children did not have to go through what she went through just to survive.

At age 14, while she continued shoplifting, Mrs. Walker's mother was engaged in the sale of drugs. Her mother trafficked in drugs for at least four years during this period of time. Mrs. Walker's siblings clearly saw Mrs. Walker as a mother figure, prompting her to double-down on her illicit conduct to support them. During this time, Mrs. Walker met Neal Walker and became pregnant with his child at the age of 15. Mrs. Walker was only in the 9th grade and felt that her only choice was to quit school. Mrs. Walker gave birth to her first child at age 16 and became pregnant again by Neal Walker within two months after the delivery of their first child. Desperate to take care of her children without the support of their father, Mrs.

Walker became more heavily involved in drug trafficking. A few years later, when she was 20 years old, Mrs. Walker became pregnant again with her third child, after which she suffered from postpartum depression and was prescribed Paxil for two or three months without counseling or other intervention. Mrs. Walker then had her fourth child while she was serving a DOC sentence, after which she was only given 24 hours to bond with the child before he was taken away from her for the remainder of her sentence. Given the constraints of her confinement following the birth of the child, Mrs. Walker suffered a second period of postpartum depression.

Once both Mrs. Walker and Neal Walker were released from separate DOC sentences, they wanted to begin a new life together. Mr. Walker did not want to return to the Lake City area, so the couple relocated to Jacksonville. Mrs. Walker and Neal Walker were married in October 2019, and have had three children together.

Mrs. Walker has a total of six children, who range in age from 29 years old to 9 years old. Two of her children are co-defendants in this case, along with her husband. Mrs. Walker's youngest son is Marcus Peterson, Jr., who is currently attending college on a football scholarship. Her youngest daughter, J.W., is only nine years old and suffers from many health issues related to asthma on a daily basis.

In her adult life, Mrs. Walker has been an active member of the community here in Jacksonville and has helped to work make the area a better place to live. This includes doing work with City Rescue Mission, the Black Chamber of Commerce, and the NAACP. Mrs. Walker has also began initiatives to assist local persons in need, including homeless, convicted felons, and women. It is important to her to lift other people up so that she can help prevent others from going through the same traumas she had to endure.

The testimony of those who will be testifying on Mrs. Walker's behalf, along with the Comprehensive Sentencing Mitigation Report included as an attachment to this memorandum, help provide the Court with the "history and characteristics of the defendant," that Congress has determined to be a central consideration for courts in imposing sentence. 18 U.S.C. § 3553(a)(1). (*See* Exhibit 1). These characteristics also help guide the Court towards a determination of what sort of sentence is needed "to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A), and "to protect the public from further crimes of the defendant." § 3553(a)(2)(C). Given her upbringing, trauma she has gone through in her life, and the subsequent cooperation with law enforcement following the offense, a term of incarceration below the minimum guideline range is sufficient to "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense." 18

U.S.C. § 3553 (a) (2)(A).

### *The Need to Avoid Unwanted Sentence Disparities*

In addition to "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), is another consideration that justifies a downward departure in Mrs. Walker's case.

There is one co-defendant in this case whom has already been sentenced and can serve as an example to avoid sentence disparities. The co-defendant is Marcus Peterson, who was sentenced by this court on September 1, 2022, and was sentenced to a term of 95 months in prison, followed by 3 years of supervised release. Although he was the main supplier of this operation, a considerably smaller amount of drugs were attributed to him, and he will not be spending the rest of his life in prison. In his case, the total offense level was 29, criminal history category was IV, and the guideline imprisonment range was 121-151. The ultimate sentence imposed was below guidelines by 26 months. This is unlike what the Government is requesting for Mrs. Walker, as likely any sentence in the guidelines range will equate to a life sentence for her.

### *Promoting Respect for the Law*

For both of the charges with which Mrs. Walker has entered a plea, the maximum allowable sentence is 20 years per count. Although this is in conflict with the guideline calculation in this case, this shows us that the sentencing commission did not believe these were charges for which a person deserved to be sentenced to life imprisonment. If the Court were to take the recommendation of the Government and sentence Mrs. Walker to consecutive sentences that would total more than the 20-year maximum for each individual count, this would be circumventing the sentencing structure which has been established for these offenses.

### *Conclusion*

Sentencing courts are charged with the responsibility of treating those that come before them as individuals. *See* Koon v. United States, 518 U.S. 81, 113 (1996) "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Courts are charged by Congress to impose a sentence that is sufficient, but not greater than necessary to fulfill the goals of

sentencing established by Congress. *See* 18 U.S.C. § 3553(a). Mrs. Walker respectfully requests this Court follow that tradition and impose a sentence of a term of incarceration below the minimum guidelines.

Respectfully submitted on this the 25th day of January, 2023.

**Dale Carson Law**

/s/Dale C. Carson
**DALE C. CARSON, ESQ.**
Florida Bar No. 0468428
444 East Duval Street, Third Floor
Jacksonville, Florida 32202
Telephone: (904) 355-6777
Facsimile: (904) 355-6738
E-mail: DCarson@DaleCarsonLaw.com

/s/Jessica M. Goldsborough
**JESSICA M. GOLDSBOROUGH, ESQ.**
Florida Bar No.: 117792
444 East Duval Street, Third Floor
Jacksonville, FL 32202
(904)355-6777 *phone* (904)355-6738 *fax*
Email: JGold@DaleCarsonLaw.com
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 25th, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to the following: Arnold B. Corsmeier, AUSA

/s/Jessica M. Goldsborough
**JESSICA M. GOLDSBOROUGH, ESQ.**